LASSER, P.J.T.C.
Taxpayers seek application of N.J.S.A 54:51A-8 (Freeze Act) to their 1992 local property tax assessment based on a 1991 judgment of the Tax Court. Taxpayers had previously contested their 1991 real property assessment which was reduced after trial on December 15,1992. The original 1991 assessment, the Tax Court judgment and the 1992 assessment are:
1991 1991 1992
Original Tax Court Original
Assessment Judgment Assessment
Land $ 91,000 $ 73,600 $ 91,000
Impvts 98,600 81,900 98,600
Total $189,600 $155,500 $189,600
1991 was a year in which a complete revaluation was put into effect in Alexandria Township. Taxpayers contested their 1991 assessment. Taxpayers did not contest the 1992 assessment by filing a petition of appeal with the county board of taxation on or *425 before April 1, 1992. Taxpayers did not receive notice that this 1992 assessment was the result of a reassessment program. Taxpayers’ counsel represented that taxpayers believed the Freeze Act would apply to the 1991 judgment for 1992 and therefore did not contest the 1992 assessment.
Taxing district contends that the Freeze Act is not applicable in this case because a reassessment program, approved by the Hunterdon County Board of Taxation and recognized by the Director of the Division of Taxation, was put into effect in Alexandria Township for the tax year 1992.
The very narrow issue, not previously considered by this court, is whether the Freeze Act applies to a year in which a reassessment program is put into effect in a taxing district.
N.J.S.A. 54:51A-8, which applies specifically to the Tax Court, provides:
Where a final judgment has been rendered by the Tax Court involving real property, the judgment shall be conclusive and binding upon the municipal assessor and the taxing district, parties to the proceeding, for the assessment year and for the 2 assessment years succeeding the assessment year covered by the final judgment, except as to changes in the value of the property occurring after the assessment date____ However, the conclusive and binding effect of the judgment shall terminate with the tax year immediately preceding the year in which a program for a complete revaluation of all real property within the district has been put into effect.

I.

The Freeze Act[1] was originally enacted in 1946 in response to a practice by certain assessors to ignore previous year assessment determinations by administrative agencies and courts and to place the prior unreduced assessment on the property for the subsequent year. This practice resulted in an assessment reduction followed by a restoration by the assessor for the following year, only to be again reduced on appeal and again restored by the *426 assessor. In order to correct the injury resulting from this practice, the statute provided that the determination of the proper assessment by judgment of an administrative agency or court could not be changed by the municipal assessor for two subsequent years unless there was a change in value. Thereafter, in 1957, the Legislature added a provision that the Freeze Act would not be applicable to a year in which a complete revaluation of all real property within the district has been put into effect. L. 1957, c. 36. I note that the years 1946 through 1957 were years of relative stability for real estate values in New Jersey. The 1980’s, however, saw substantial increases in real estate values and consequently some criticism of the Freeze Act, which limited assessors in the face of rapidly rising real estate values.
Changing real estate values made periodic revaluation necessary, and, over the past three decades, revaluations have become commonplace. In recent years, the high cost of revaluation programs by independent revaluation firms has led to more frequent internal reassessment programs by assessors. The increased use of computerized multiple regression analysis programs in local property tax assessing encouraged the adoption of reassessment programs.
In 1984, the Director of the Division of Taxation amended N.J.AC. 18:12A-1.13 Freeze Act, as it related to county boards of taxation, by adding the following:
(c) A judgment entered by a county board of taxation which is not further appealed by a party shall be deemed to be binding and conclusive upon the municipality and tax assessor for the tax year in question and the two tax years immediately thereafter unless a revaluation, reassessment or change in value has occurred subsequent to the assessing date.
Section 801.13 of the Handbook for New Jersey Assessors (3d ed. 1989), originally issued in 1963 by the Local Property and Public Utility Branch of the Division of Taxation, describes reassessment programs as follows:
The terms “revaluation program” and “reassessment program” were at one time used interchangeably. Over the years, however, the phrase “reassessment program” has taken on a separate meaning. Broadly defined, a reassessment is an important change in assessment practice in a taxing district, other than a revaluation, which results in a significant difference in the aggregate assessed valuation of *427 that taxing district from one year to a following year, other than that caused by inclusion of added assessments or other new construction, and, further, which results in a variance in values from one year to a following year in a substantial number of individual parcels of real property in that same taxing district. Like a revaluation program, a proper reassessment program seeks to spread the tax burden equitably throughout a taxing district. A reassessment program, rather than being conducted by an outside professional appraisal firm under contract with the municipality, is instead an adjustment or updating of previous revaluation or previous reassessment, carried out by, and under direct supervision of the tax assessor. A reassessment plan must be submitted to and approved by the county board of taxation. The plan must set forth methods to be used, the date of completion and the year in which the reassessment is to take effect. The county board of taxation must advise the assessor of its approval or disapproval of a reassessment proposal within 30 days from the date the reassessment plan was submitted. If the plan is disapproved, the county board of taxation must inform the assessor of the reasons for the disapproval. If the reassessment plan is approved the county board of taxation must:
(1) notify the Director of the Division of Taxation of the assessor’s reassessment plan and furnish a copy of the plan to the Director;
(2) require a written monthly progress report from the assessor of taxing district;
(3) require the assessor of the taxing district to actively participate in the reassessment program.
It is generally accepted that a good reassessment program includes: an analysis of all recent sales of real property occurring within a taxing district, including a comparison of sales with the assessed values of the properties sold; an identification of real property value trends occurring within the taxing district; a review of all real property values, parcel by parcel within a taxing district; a review and revision of all unit land values, with such revisions as are made placed on a land value map as well as on individual property record cards; gathering of pertinent income data and utilization of such data where applicable; development of local cost conversion factors, and application of these factors to improvements contained in the taxing district, with adjustments reflected on individual property record cards; a review and adjustment of depreciation and obsolescence factors with changes reflected on individual property records; a reconciliation and revised true value developed for each property, which revised true value is to be noted on the property record card for each property; and carrying forward revised taxable values to the tax list tor the year in which the reassessment is to become effective. Notification of taxpayers of the revised values developed for their properties, with an opportunity for taxpayer review is considered good practice.
I note that § 802.5 of the Handbook requires a revaluation firm to afford each taxpayer an opportunity to review and confer with the firm concerning the proposed value to be placed against his property. Section 802.51 requires the revaluation firm to mail a written notice to each individual taxpayer showing the appraised value of the taxpayer’s property and advising the taxpayer of his right to attend an individual informal review concerning the value *428 of Ms property as developed by the revaluation firm. See N.J.AC. 18:12-4.9 for taxpayer review procedure in revaluations.
A taxpayer’s remedy m a local property tax case was enhanced by the adoption of chapter 123 of the Laws of 1973, wMch requires the Director of the Division of Taxation to determine the average ratio and the common level range for each municipality. N.J.S.A. 54:l-35a et seq. TMs statute* when enacted, excluded both district-wide revaluation programs and reassessment programs approved by the county board of taxation from the requirement that the admimstrative agency and the court provide a remedy to a taxpayer by reducing the assessment to the common level of assessment ratio as determined by the Director if the assessment is above the common level range.
Alexandria TownsMp completed and adopted a reassessment program effective October 1, 1991 for the 1992 tax year, as is Mdicated in a supplement to the certification of average ratios and common level ranges for use in the tax year 1992, dated April 1, 1992, of Leslie A. Thompson, Director of the Division of Taxation. This reassessment program was approved by the Hunterdon County Board of Taxation. The Legislature provided that the common level ratio is available as a remedy for taxpayers unless a complete revaluation or reassessment program is adopted by the mumcipality for the tax year. N.J.SA 54:51A-6. Adoption of either program bars taxpayer relief under tMs statute. Similarly, N.JAC. 18:12A-1.13(c) bars Freeze Act relief by the county tax board if a revaluation or reassessment program has been adopted.

II.

I find that since the 1957 amendment, wMch added the revaluation exception to the Freeze Act, there has been a substantial change in assessing methods. TMs change was recognized by the Legislature with respect to the common level ratio remedy and by the Director in N.J.AC. 18:12A-1.13(c). Although the 1957 amendment does not expressly include the term “reassessment,” that term was not in common assessing usage in 1957 as distinct from the term “revaluation.”
*429 Does the 1957 reference to revaluation programs encompass reassessment programs in a taxing district? Probable legislative intent as a matter of legislative interpretation was discussed by the Supreme Court in J.C. Chap. Prop. Owner’s, etc., Assoc. v. City Council, 55 N.J. 86, 100, 259 A.2d 698 (1969), in which the Court stated:
When all is said and done, the matter of statutory construction here will not justly turn on literalisms, technisms or the so-called formal rules of interpretation; it will justly turn on the breadth of the objectives of the legislation and the commonsense of the situation.
In that case there was no specific reference to airspace in an urban renewal blighted area statute. The Court found that in light of the objectives of the statute there was no intent to exclude airspace above railroad tracks. Either the subject was never considered or the Legislature concluded that the statutory terms were sufficiently comprehensive to include airspace. In either event, the Court concluded that the legislation should be construed as including airspace.
The Court referred to 2 Sutherland, Statutory Construction, § 5102 at 509-10 (3d ed. 1943):
Standards established by the medium of legislation are usually intended to have considerable breadth with the result that a statute may cover many situations that do not immediately occur to the mind. And so it is a general rule of statutory construction that a statute, expressed in general terms and words of present or future tense, will be applied, not only to situations existing and known at the time of enactment, but also prospectively to things and conditions that come into existence thereafter. Legislation must be given elastic operation if it is to cope with changing economic and social conditions.
I find that it is the probable legislative intent that the term “revaluation” in N.J.S.A 54:51A-8 encompasses the term “reassessment,” because the terms revaluation and reassessment had previously been used interchangeably and because of the similar comprehensive nature of the revaluation and reassessment programs.
I conclude that the Freeze Act does not apply where the taxing district has completed and adopted either a revaluation or a reassessment program approved by a county board of taxation of *430 which the taxpayer has notice within a reasonable time prior to the appeal deadline.

III.

This case establishes for the first time that the Tax Court will not apply the Freeze Act in a year in which a county tax board approved reassessment program is adopted by a taxing district. A reading of N.J.S.A 54.-51A-S could lead one to conclude, as did the taxpayers, that the Freeze Act does not apply where a revaluation program has been adopted, but is applicable in the event of a reassessment program. Further, although there is a provision requiring notice to taxpayers of revaluation programs, there is no such requirement for reassessment programs. Plaintiff had no notice of the adoption of the reassessment program because no actual notice was provided and there was no basis for inferring a reassessment because there was no change in the subject assessment from 1991 to 1992.[2] Accordingly, in this case, the Freeze Act will be applied to the 1992 assessment based on the 1991 judgment.
Judgment will be entered applying the Freeze Act to the subject for the year 1992 based on the 1991 judgment of the Tax Court.

The Tax Court Freeze Act statute, N.J.S.A. 54:51A-8, enacted in 1983, contains language similar to the county board of taxation Freeze Act statute in NJ.S.A. 54:3-26 and the prior repealed Division of Tax Appeals Freeze Act statute in N.J.S.A. 54:2-43, both enacted in 1946 and amended in 1957.

 The taxing district cannot contend that the result of applying the Freeze Act would result in an inequitable assessment for 1992 because 1991, the year in which true value was established, was a revaluation year and 1992 is the year immediately following the revaluation in which the common level ratio of assessment to true value continued to be 100%.