KUSKIN, J.T.C.
Under N.J.S.A. 54:4-23, a municipal tax assessor must make an annual determination of the value of each parcel of real property in the municipality. An amendment enacted in 2001, L. 2001, c. 101 (“Chapter 101”), added to the statute a requirement that, in order for an assessor to reassess “all or part” of a municipality, the assessor must obtain from the county board of taxation and the New Jersey Division of Taxation approval of a “compliance plan.” The issue in this matter is whether Chapter 101 requires an approved compliance plan in order for an assessor to change a single property tax assessment. No reported opinion has addressed this issue or otherwise interpreted Chapter 101.
Plaintiff is the owner of property designated on defendant’s tax map as Block 1, Lot 5 (the “Subject Property”), which, for tax year 2003, was assessed at $6,728,150. For tax year 2004, defendant’s assessor increased the assessment to $9,260,600 and carried over the increased assessment to tax year 2005. Plaintiff has moved for summary judgment invalidating the assessment increases and reducing the assessment for each of 2004 and 2005 to $6,728,150, the amount of the 2003 assessment.[1] Plaintiff contends that it is entitled to this relief because, in imposing the 2004 increase, the assessor failed to submit and receive approval for a compliance plan in accordance with the requirements of N.J.S.A. 54:4-23.
Defendant not only opposes plaintiffs motion but also has cross-moved for summary judgment on the basis that, if Chapter 101 *554 requires approval of a compliance plan in connection with the change in the 2004 assessment on the Subject Property, then the legislation is unconstitutional. The Attorney General of New Jersey was notified of defendant’s contention, R. 4:28-1(a), but declined to participate in these proceedings.
For the reasons set forth below, I hold that the changes in the 2004 and 2005 assessments on the Subject Property were valid. Consequently, I deny plaintiffs motion for summary judgment and deny defendant’s motion for summary judgment as to the constitutional issue. However, I enter partial summary judgment in favor of defendant and against plaintiff as to the validity of the assessor’s procedures in changing the 2004 and 2005 assessments.
As amended by Chapter 101, N.J.S.A. 54:4-23 reads in pertinent part as follows:
The assessor shall ... after examination and inquiry, determine the full and fair value of each parcel of real property situate in the taxing district at such price as, in his judgment, it would sell for at a fair and bona fide sale by private contract on October 1 next preceding the date on which the assessor shall complete his assessments, as hereinafter required; ... * provided ... however, that when the assessor has reason to believe that property comprising all or part of a taxing district has been assessed at a value lower or higher than is consistent with the purpose of securing uniform taxable valuation of property according to law for the purpose of taxation, or that the assessment of property comprising all or part of a taxing district is not in substantial compliance with the law and that the interests of the public will be promoted by a reassessment of such property, the assessor shall, after due investigation, make a reassessment of the property in the taxing district that is not in substantial compliance, provided that (1) the assessor has first notified, in writing, the mayor, the municipal governing body, the Division of Taxation in the Department of the Treasury, the county board of taxation, and the county tax administrator of the basis of the assessor’s determination that a reassessment of that property in the taxing district is warranted and (2) the assessor has submitted a copy of a compliance plan to the county board of taxation and to the Division of Taxation for approval____ Following a reassessment of a portion of the taxing district pursuant to an approved compliance plan, the assessor shall certify to the county board of taxation, through such sampling as the county board of taxation deems adequate, that the reassessment is in substantial compliance with the portions of the taxing district that were not reassessed.* [2]
For tax year 2000, defendant’s assessor performed a reassessment in the entire municipality. As part of the reassessment, however, he did not value the Subject Property because of its size *555 and complexity.[3] The assessor advised plaintiff that he was seeking to have the Subject Property valued by an independent appraiser and that, notwithstanding the reassessment, he would maintain the prior assessment on the Subject Property until such time as he had received an opinion of value from the appraiser. In February 2002, the independent appraiser submitted to the assessor the appraiser’s opinion that the value of the Subject Property was $11,000,000.
Defendant then filed a petition of appeal with the Warren County Board of Taxation seeking an increase in the 2002 assessment on the Subject Property. Plaintiff appealed directly to the Tax Court for that year. With the consent of the parties, the county board affirmed the assessment without prejudice. Defendant did not appeal to the Tax Court from the county board judgment and did not file a counterclaim in plaintiffs appeal. Defendant’s assessor did not change the 2003 assessment. Plaintiff filed with the Tax Court a direct appeal of the 2003 assessment. Defendant did not appeal the assessment and, again, did not file a counterclaim in plaintiffs appeal. Thereafter, another appraiser, who had inspected the Subject Property in January 2003, advised the assessor that, if plaintiffs appeals were tried, the result might be an increase in the assessment for each year. After a settlement conference in September 2003, plaintiff withdrew its 2002 and 2003 appeals.
As set forth above, defendant’s assessor, without submitting a compliance plan, increased the 2004 assessment on the Subject Property, and imposed the same assessment for 2005. Plaintiff appealed the assessments for both years directly to the Tax Court. The parties have stipulated that the assessor made no other changes in 2004 assessments except for added or omitted assessments or changes required by tax appeal judgments. In a certification filed in opposition to plaintiffs summary judgment motion, the assessor described his analytical process in changing the 2004 *556 assessment on the Subject Property and continuing that change in 2005, stating:
I determined the assessments on the BASF property for 2004 and 2005 because I had become convinced as a result of the history of the tax appeal litigation described above [for tax years 2002 and 2003] that the prior tax assessments had been too low. In my opinion, my determination was also a result of the 1999-2000 reassessment, because the independent appraisal was asked for as part of that effort.
[Certification of David M. Gill, CTA, June 30, 2005, ¶ 15.]
Plaintiff contends that an approved compliance plan was required for the increase in its 2004 assessment because, as used in Chapter 101, the word “part” refers to any one or more parcels of property in a municipality. Therefore, an assessment increase on a single property may be implemented only through one of two procedures: (1) the filing of an appeal; or (2) a reassessment after approval of a compliance plan. Plaintiff asserts that, because defendant’s assessor did not submit a compliance plan in connection with the change in the 2004 assessment on the Subject Property, the change violated the provisions of N.J.S.A. 54:4-23 and should be set aside for 2004 and 2005.
Defendant contends that the increase in the 2004 assessment on the Subject Property and the continuation of the increase in tax year 2005 were proper because the increase constituted assessment maintenance permitted under N.J.S.A. 54:4-23, even as amended by Chapter 101. Defendant also argues that the increase was permitted under the regulation promulgated by the Director of the New Jersey Division of Taxation (“Director”) relating to Chapter 101 which expressly excluded from the compliance plan requirement assessment increases resulting from tax appeals and reassessments. Defendant describes the increase in the 2004 assessment on the Subject Property as covered by this exclusion because the increase resulted from the appeals filed by plaintiff for tax years 2002 and 2003 and because the increase was imposed pursuant to the approved reassessment program for tax year 2000. Finally, defendant asserts that, if a compliance plan was required in order to change the 2004 assessment on the Subject Property, then Chapter 101 is unconstitutional because it requires an assessor to violate Article VIII, § 1, ¶ la of the New *557 Jersey Constitution providing that all real property be assessed “according to the same standard of value.”
Plaintiff responds that the change in assessment imposed on the Subject Property was not the result of the 2002 or 2003 appeals filed by plaintiff, both of which were withdrawn, or the result of the 2002 appeal filed by defendant which resulted in an affirmance of the assessment without prejudice by the county board of taxation and no further appeal by defendant. Plaintiff also contends that an assessment change for tax year 2004 cannot be considered part of a reassessment for tax year 2000. With respect to defendant’s constitutional argument, plaintiff asserts that Chapter 101 merely sets forth procedures to be followed by an assessor for purposes of changing non-uniform assessments and does not restrict the assessor’s ability to impose assessments using the same standard of value throughout a municipality.
Resolution of the arguments of the parties requires a determination of whether the phrases “part of a taxing district” and “a portion of the taxing district” as used in Chapter 101 mandate an approved compliance plan as a prerequisite to a change in the assessment on one property if the change is for reasons unrelated to a tax appeal judgment or a change in the condition of the property. In the absence of decisional authority and because Chapter 101 contains no definition of the terms “part” or “portion,” consideration of legislative history is appropriate for purposes of attempting to determine the intent of the Legislature in using these terms. See Township ofPennsauken v. Schad, 160 N.J. 156, 170, 733 A.2d 1159 (1999) (commenting that, if statutory language is ambiguous, a court may consider “extrinsic factors, such as the statute’s purpose, legislative history, and statutory context to ascertain the legislature’s intent.”)
As initially introduced, Chapter 101 required an assessor to “order a revaluation or make a reassessment of all the property in the taxing district” if the assessor had reason to believe that property in “a part of a taxing district” was assessed at a value higher or lower than the value that would be consistent with uniform assessment practices, or believed that “the assessment of *558 property in a part of a taxing district” was not in substantial compliance with law. Senate Bill No. 1334 (May 22, 2000) (“S. 1334”). Floor amendments to S. 1334 adopted on September 21, 2000 and October 2, 2000 changed the requirement for a revaluation or reassessment of “all the property in the taxing district” to a requirement that the assessor “make a reassessment of the property in the taxing district that is not in substantial compliance,” and mandated that the assessor submit a compliance plan to the county board of taxation and the Division of Taxation for approval before implementing a reassessment. Similar legislation was introduced in the Assembly on November 9, 2000 as Assembly Bill No. 2947 (“A. 2947”) and amended to conform to the Senate floor amendments. Senate Bill No. 1334, as amended, was then substituted for A. 2947 and enacted on June 14, 2001 to take effect immediately.
Legislative and committee statements attached to the initial and amended versions S. 1334 and A. 2947 merely reiterate the statutory usage of the words “part” and “portion” without explaining their intended meaning. See Statement to S. 1334 (May 22, 2000); Senate Community and Urban Affairs Committee Statement to S. 1334 (June 15, 2000), Statement to S. 1334, First Reprint with Senate Floor Amendments (September 21, 2000); Statement to A. 2947 (November 9, 2000); Assembly Local Government Committee Statement to S. 1334, Third Reprint with Committee Amendments (January 18, 2001); and Assembly Local Government Committee Statement to A. 2947 with Committee Amendments (January 18, 2001).
The foregoing legislative history provides no guidance as to whether the Legislature intended “part” or “portion” to refer to a single property. Dictionary definitions of these terms also are not helpful. The definition of “part” includes the following:
a (1): one of the often indefinite or unequal subdivisions into which something is or is regarded as divided and which together constitute the whole (2): an essential portion or integral element b: one of several or many equal units of which something is composed or into which it is divisible____
*559 [.Meniam Webster’s Collegiate Dictionary 846 (10th ed.1996).]
The definition of “portion” includes the following:
1: an individual’s part or share of something ... 3: an often limited part set off or abstracted from a whole____
[Id. at 908J
Useful guidance as to the meaning of “part” and “portion” as used in Chapter 101 can be found in (1) the regulation promulgated by the Director relating to the legislation, (2) the document that the regulation specifies for use in submitting a compliance plan for approval, and (8) the Director’s responses to comments made to the regulation when it was first proposed.
The Director’s interpretation of a tax statute generally should be given deference. Koch v. Director, Division of Taxation, 157 N.J. 1, 8, 722 A.2d 918 (1999) (stating that, although the courts are the final authorities on issues of statutory interpretation, they “generally defer to the interpretation that an agency gives to a statute that agency is charged with enforcing”). See also New Jersey Guild of Hearing Aid Dispensers v. Long, 75 N.J. 544, 575, 384 A.2d 795 (1978) (stating that “[JJudieial deference to the administrative interpretation of a statute is even more appropriate “when the case involves the construction of a new statute by its implementing agency’ ”). When the administrative interpretation is reasonable, neither arbitrary nor capricious, and consistent with the purpose of a statute, “that interpretation should be upheld.” Blecker v. State, 323 N.J.Super. 434, 442, 733 A.2d 540 (App.Div.1999).
The regulation relating to Chapter 101 is found at N.J.A.C. 18:12A-1.14(i) and is entitled “Assessment maintenance.” Its initial words indicate that the terms “part” and “portion” as used in Chapter 101 do not refer to a change in a single assessment. The regulation begins by referring to assessments in the plural: “An assessor proposing to revise and update assessments.... ” N.J.A.C. 18:12A-1.14(i). Subparagraph (i)(3) sets forth the criteria to be used by a county board of taxation and the Division of Taxation in deciding whether to approve a compliance plan. The first two criteria are the Director’s ratio and the general coefficient of deviation. The third criterion is the following: “Ordinari *560 ly neighborhoods with average weighted ratios within the common level range should not be reassessed unless that neighborhood’s coefficient of deviation is over 15 percent.” N.J.A.C. 18:12A-1.14(i)(3)(iii). The fourth criterion permits relaxation of criteria i through iii “where circumstances warrant.” N.J.A.C. 18:12A-1.14(i)(3)(iv). The first sentence of the fifth criterion is: “The same standard for selecting areas to be included in the compliance plan must be applied uniformly.” N.J.A.C. 18:12A-1.14(i)(3)(v). The regulation then sets forth three examples of the application of this criterion. The first example refers to a “particular part or neighborhood of the municipality” and each of the second and third examples refers to a “neighborhood of the municipality.” The sixth criterion provides that a maximum of “25 percent of the total number of line items can be changed except in extraordinary circumstances,” N.J.A.C. 18:12A-1.14(i)(3)(vi), and the seventh criterion provides that “[a]ll areas of the municipality must be reviewed. No neighborhood or part of a municipality can be overlooked for consideration for adjustment pursuant to assessment maintenance solely because there are no sales in that neighborhood or part.” N.J.A.C. 18:12A-1.14(i)(3)(vii).
The foregoing provisions of N.J.A.C. 18:12A-1.14(i) interpret Chapter 101 as requiring a compliance plan only for changes to assessments in a “neighborhood” or “area” of a municipality. The only use of the word “part” is in conjunction with “neighborhood,” thereby implying that a “part” of a municipality comprises more than a single property.
The eighth criterion for approval of a compliance plan, on its face, appears inconsistent with the preceding criteria. Criterion viii identifies changes in assessed value for which a compliance plan is not required and reads, in its entirety, as follows:
Assessed value changes due to clerical, typographical, transpositional, physical descriptive or mathematical errors, added assessments, omitted assessments, omitted added assessments, exemptions, demolitions, governmentally imposed restrictions, planning board and/or zoning board of adjustment approvals, approved revaluations, site contamination, removal of contaminated soil and property remediation; and storm, cyclone, tornado, earthquake, fire, flood, hurricane, vandalism, or other casualty, qualified farmland, subdivisions, mergers and changes resulting from appeals or settlement agreements, do not require the filing of a compliance plan.
*561 [N.J.A.C. 18:12A-1.14(i)(3)(viii).]
Plaintiff cites this criterion as supporting its position that an approved compliance plan was a prerequisite to the assessor’s change in the 2004 assessment on the Subject Property. Plaintiff argues that the types of changes to which the criterion refers relate to individual properties, and that the inclusion in N.J.A.C. 18:12A-1.14(i) of references to such changes would be unnecessary unless a compliance plan otherwise would be required for changes in the value of a single property.
Plaintiffs interpretation of N.J.A.C. 18:12A-1.14(i)(3)(viii) renders the provision inconsistent with the language of the balance of N.J.A.C. 18:12A-1.14(i) which, as discussed above, indicates that a compliance plan is required only for changes in assessments in neighborhoods or areas of a municipality. I conclude that criterion viii should be read in a manner consistent with the balance of N.J.A.C. 18:12A-1.14(i). See Cumberland Arms Assocs. v. Burlington Tp., 10 N.J.Tax 255, 268 (Tax 1988) (discussing the “well settled” proposition that, in construing a statute, a court should not be guided by “a single sentence” but must examine “the provisions of the whole law, and ... its object and policy”). Consistency results if the changes set forth in the criterion are deemed to constitute examples, but not an all-inclusive list, of changes in individual assessments permitted without the submission of a compliance plan. Under this interpretation, criterion viii does not require, by implication, approval of a compliance plan for the change made by defendant’s assessor in the 2004 assessment on the Subject Property.
The preceding interpretation of N.J.A.C. 18:12A-1.14(i) derives support from the contents of Form CP, the form specified by the regulation for use in submitting a compliance plan. N.J.AC. 18:12A-1.14(i)(2). This form refers repeatedly to “neighborhoods” in a manner consistent with the criteria discussed above. Section II of the document is entitled “Specific Information,” and sets forth the following four items of information that must be supplied:
6. Total number of neighborhoods in municipality__
7. Total number of neighborhoods reviewed must be 100%.
*562 8. Total number of neighborhoods changed_
9. List neighborhoods where assessments need adjustment in the chart below:
Below Item 9 is a chart with column headings including: “No. of Line Items in Neighborhood,” “Ratio of Neighborhood,” “No. of Sales in Neighborhood,” and “Percent of Proposed Change in Total Valuation by Neighborhood.” Section III of the form, containing the certification and acknowledgement of the assessor, provides: “I hereby declare as tax assessor that the supporting data for the compliance plan on this report is accurate for the foregoing neighborhoods.” The General Instructions relating to the filing of the form include the following provisions:
This form must be filed in unison with the county tax board and Taxation Division if you intend to make a property assessment change due to change in valuation. This change in assessment must be documented by a study of sales in a particular part (neighborhood) of your municipality and valued and assessed by the same standards as other property in your municipality (the Director’s Average Ratio is often used as a guide).
The Director’s responses to comments made with respect to N.J.A.C. 18:12A-1.14(i) as initially proposed provide additional insight into the Director’s interpretation of Chapter 101. One comment was that Paragraph (i)(3)(viii) should contain an expanded list of changes to assessments for which a compliance plan was not required. Among the suggested inclusions in the list were changes due to removal of contaminated soil and property remediation and the new availability of utilities to a site. In response the Director stated that removal of contaminated soil and property remediation “when it involves a site specific change does not require a compliance plan.” 36 N.J.R. 1022(a), 1023 (February 17, 2004.) As to the availability of utility services, however, a compliance plan would be required because “[providing public water and sewer lines often involves large tracts of land and neighborhoods.” Ibid, (emphasis added).
A similar focus on neighborhood changes appears in the Director’s response to a comment that the filing of a condominium plan should permit a change of assessment without a compliance plan. The Director noted that a condominium filing “may involve a neighborhood change. Accordingly, a compliance plan, pursuant *563 to N.J.S.A. 54:4-28, may be required.” Ibid. However, “a compliance plan should not be required where an individual condominium unit is reassessed solely because artificial governmental restrictions which had kept the value of the unit below market no longer exist.” Ibid. In his response to a comment that a compliance plan should not be required “where physical changes to properties affect the value of nearby properties,” the Director stated that these types of changes “could affect the value of many properties such that, pursuant to N.J.S.A 54:4-23, a compliance plan would have to be done.” Ibid.
Based on the preceding discussion, I conclude that, as interpreted by the Director, Chapter 101 does not require a compliance plan for a change in the assessment on a single property in a municipality. I further conclude that the Director’s interpretation is reasonable and effectuates the purpose of the legislation. My conclusion is buttressed by a newspaper article in The Press of Atlantic City reporting that the motivation for introduction of this legislation was changes in assessments in neighborhoods or areas of certain municipalities. “The Bill [ (S. 1334) ] follows homeowner complaints in Townships including Little Egg Harbor and Berkeley after partial reassessments raised property values in some areas. Values in other areas of the same municipalities remained the same.” The Press of Atlantic City, Sec. C, p. 3 (Sept. 23, 2000).
Consideration of this newspaper article is appropriate when, as here, more traditional legislative history, such as committee statements, is not helpful in interpreting a statute.
Not only may extrinsic aids be used to resolve legislative ambiguities, they may also appropriately supply reassuring confirmation of literally apparent meaning, as is here the case. Nor do we think it is improper to consider materials which may never have met the legislative eye. While a proposed enactment may first see the light of day in legislative chambers, its conception and preparation have frequently taken place elsewhere.... Of course such materials must be carefully scrutinized and their weight and authenticity evaluated, but we see no merit in a rule demanding their total exclusion from judicial consideration.
[Data Access Systems, Inc. v. State, 63 N.J. 158, 166-67, 305 A.2d 427 (1973) (citations omitted).]
*564 Materials relating to legislative motivation are among the extrinsic aids to which our courts have turned for guidance in interpreting statutes.
[I]n most jurisdictions “references to the motives of members of the legislature in enacting a law are uniformly disregarded for purposes having to do with its interpretation except as they are expressed in the statute itself.” However____ “[t]he motive which led to the enactment of the statute is one of the most certain means of establishing its own true sense.”... Thus, courts have viewed the context of events which prompted legislation____
[Raybestos-Manhattan, Inc. v. Glaser, 144 N.J.Super. 152, 182, 365 A.2d 1 (Chan.Div.1976), aff'd, 156 N.J.Super. 513, 384 A.2d 176 (App.Div.1978) (citations omitted).]
See also First Resolution v. Seker, 171 N.J. 502, 512, 795 A.2d 868 (2002) (stating: “If a statute or rule is ambiguous, courts may ascertain the intent of the drafters by looking to extrinsic sources such as the statute’s or rule’s underlying purpose and history.” (citation omitted)).
The statutory scheme relating to the assessment process also supports my conclusion that Chapter 101’s requirement for a compliance plan does not apply to a change in a single assessment. See Chase Manhattan Bank v. Josephson, 135 N.J. 209, 225, 638 A.2d 1301 (1994) (noting the relevance of consistency with “the statutory scheme” as a factor in interpreting a particular statutory provision). The applicable statutory scheme includes the first part of N.J.S.A. 54:4-23 which obligates the assessor to make an annual determination of value. Based on this provision, our courts have recognized that annual assessment maintenance, without the necessity for a municipal-wide revaluation or reassessment, is an essential element of the assessment process.
Assessment maintenance is “the practice by which an assessor changes some assessments in a year when a district-wide revaluation or reassessment is not performed. The assessor’s authority is derived from N.J.S.A. 54:4-23____” Regent Care Center, Inc., v. City of Hackensack, 362 N.J.Super., 403, 411-12, 828 A.2d 332 (App.Div.2003).[4] The Appellate Division, in Regent *565 Care, described the need for, and importance of, assessment maintenance.
Assessors cannot be expected to do nothing in years between district-wide revaluations or reassessments. Their role is not that of a caretaker. In Tri[-]Terminal Corp. v. Bor. of Edgewater, 68 N.J. 405 [346 A.2d 396] (1975), the Court made this plain and acknowledged the proper role of assessment maintenance:
The law calls for the separate assessment of each parcel annually at its true value on the assessing date. While practicalities obviously preclude most assessors reviewing every assessment line item every year, there should nevertheless be alertness to changed valuation factors peculiarly affecting individual properties in years between revaluations and requiring prompt revision of such assessments in fairness to the particular taxpayer or to the taxing district. It should be obvious that, absent such attention, the carrying over of assessments each year from one general revaluation to the next is not the proper discharge of the assessor’s function.
Thus, adjusting an assessment for legitimate reasons is an appropriate exercise of the assessor’s statutory obligation and is not arbitrary or discriminatory. This is the appropriate mechanism by which the assessor keeps the tax roles current when individual properties, based upon particularized, legitimate reasons, require adjustment.
[Regent Care, supra, 362 N.J.Super. at 416-17, 828 A.2d 332 (quoting Tri-Terminal Corp., supra, 68 N.J. at 413-14, 346 A.2d 396 (citation omitted)).]
The court also discussed the distinction between assessment maintenance and the selective or spot assessments held to be unconstitutional in Township of West Milford v. Van Decker, 120 N.J. 354, 576 A.2d 881 (1990), and concluded that assessment maintenance does not conflict with constitutional limitations so long as the maintenance does not involve arbitrary, intentional discrimination. Regent Care, supra, 362 N.J.Super. at 412-19, 828 A.2d 332. Assessment adjustments for “legitimate reasons” are not arbitrary or discriminatory. Id. at 417, 828 A.2d 332. Accord Owners Maintenance Corp. v. Fort Lee Bor., 22 N.J.Tax 648, 650-51, 2005 WL 3078223 (App.Div.2005). See also Local Property and Public Utility Branch, Division of Taxation-Department of the Treasury, State of New Jersey, Handbook for New Jersey Assessors, Section *566 901.1 (1989) (describing the assessor’s obligation to keep assessments “equitable” by adjusting assessments “where justified”).
On the basis of the preceding discussion, I conclude that Chapter 101 supplemented, but did not modify, the provisions of N.J.S.A. 54:4-23 identified in Regent Care, supra, 362 N.J.Super. at 412, 828 A.2d 332, as providing the statutory basis for assessment maintenance. Chapter 101 requires a compliance plan in connection with assessment maintenance consisting of changes in assessments in a neighborhood or area of a municipality but not in connection with assessment maintenance consisting of a change in the assessment on a single property.[5]
My interpretation of Chapter 101 obviates the need to address defendant’s arguments (1) that the change in the assessment on the Subject Property was expressly permitted under N.J.AC. 18:12A-1.14(i)(3)(viii) because the change was the result of tax appeals or was part of a reassessment plan, and (2) that requiring a compliance plan for the assessment change would be unconstitutional. I note, however, that I reject all of these arguments. See Busik v. Levine, 63 N.J. 351, 363-64, 307 A.2d 571, appeal dismissed, 414 U.S. 1106, 94 S.Ct. 831, 38 L.Ed.2d 733 (1973) (permitting a court to decide issues not requiring decision when the court “believes that course is warranted”).
The provisions of N.J.A.C. 18:12A-1.14(i)(3)(viii) excluding from the compliance plan requirement changes “resulting from appeals” should not be interpreted to apply to the facts of this matter where (1) the appeals related to 2002 and 2003, and not to 2004 when the assessment change occurred, and (2) the appeals for both 2002 and 2003 either were not pursued by defendant or were withdrawn by plaintiff. This is particularly so when defendant has not provided any facts or convincing argument to connect the 2002 and 2003 appeals with the 2004 assessment change.
The certification of defendant’s assessor, quoted above, does not establish that he changed the assessment on the Subject Property *567 for 2004 and 2005 as a result of either the 2002 or 2003 appeal. The assessor characterizes the change as resulting from the 1999-2000 reassessment, “because the independent appraisal was asked for as part of that effort.” I reject the assessor’s and defendant’s position. First, I note that N.J.AC. 18:12A-1.14(i)(3)(viii) does not exclude “reassessments” from the compliance plan requirement. The regulation does provide that approved “revaluations” do not require a compliance plan. Second, if I were to assume that the reference to revaluations in the regulation extends to approved reassessments, I would reject defendant’s argument because an assessment made four years after a reassessment goes into effect cannot be deemed part of the reassessment even if the assessment should have been included in the reassessment. When defendant’s assessor submitted to the county board of taxation his list of reassessment values for tax year 2000, he certified, as required by statute, that every property on the list “has been valued without favor or partiality, at its taxable value----” N.J.SA 54:4-36(a). The assessor’s certification describing his pi’ocedures for valuing the Subject Property demonstrate that his certification to the county board for tax years 2000, 2001, 2002, and 2003 did not apply to the Subject Property. This should not and does not result in the incorporation of an assessment first imposed in tax year 2004 into the tax year 2000 reassessment
With respect to defendant’s constitutional argument, I interpret Chapter 101 as simply setting forth a procedure to be followed by the tax assessor in implementing a partial reassessment in a municipality. Thus, even if I had interpreted Chapter 101 as requiring a compliance plan for the change in the assessment on the Subject Property, that requirement would not preclude defendant’s assessor from adjusting the assessment so long as he followed the requisite statutory procedure. The procedure, therefore, does not prevent the assessor from applying “the same standard of value” in assessing property as required by Article VIII, § 1, ¶ 1(a) of the New Jersey Constitution.
For the reasons set forth above, plaintiff’s motion for summary judgment is denied, and defendant’s motion for summary judgment relating to an alleged constitutional violation is also denied. *568 Defendant did not move for summary judgment on the issue of the validity, under N.J.S.A. 54:4-23 as amended by Chapter 101, of the change in the assessment on the Subject Property for tax years 2004 and 2005. Because I have concluded, as a matter of law, that the change was valid, I will enter summary judgment in favor of defendant on this issue. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 537, 666 A.2d 146 (1995) (stating: “If a case involves no material factual disputes, the court disposes of it as a matter of law by rendering judgment in favor of the moving or non-moving party____”).
The Complaints filed by plaintiff in these appeals challenged not only the validity of the 2004 and 2005 assessments but also them amounts. Consequently, a trial will be scheduled on the issue of the value of the Subject Property and Lots 5.02, 5.03, 5.05, and 28 in Block 1 for each year under appeal.

 Each of plaintiff's appeals includes four additional tax lots assessed as land only, namely, Lots 5.02, 5.03, 5.05, and 28 in Block 1. The assessments on these lots are not challenged in plaintiff's motion.

 The text between asterisks was added by Chapter 101.

The Subject Property contains 138.45 acres of land and a multi-building complex used as a chemical processing facility.

 Chapter 101 was not at issue in Regent Care because both the Tax Court and the Appellate Division ruled that this legislation should be applied prospectively *565 only and, therefore, was not applicable to tax yeai 1998, the year under appeal. Regent Care Center Inc. v. City of Hackensack, 20 N.J.Tax 181, 194 (Tax 2001), aff'd, 362 N.J.Super. 403, 407-408, 828 A.2d 332 (App.Div.2003).

 Because this matter involves a change to a single assessment, I need not, and do not, define the terms "neighborhood" and "area.”